**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| FIREROCK GLOBAL OPPORTUNITY FUND LP, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>RUBICON TECHNOLOGY, INC., RAJA M. PARVEZ, WILLIAM F. WEISSMAN, DON N. AQUILANO, DONALD R. CALDWELL, MICHAEL E. MIKOLAJCZYK, RAYMOND J. SPENCER, CANACCORD GENUITY INC. and D.A. DAVIDSON & CO.,<br><br>Defendants. | Case No. 15-cv-03813<br><br>Hon. Manish S. Shah |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF CARLOS BARROS TO BE APPOINTED LEAD PLAINTIFF AND TO APPROVE LEAD PLAINTIFF'S CHOICE OF COUNSEL**

**STATEMENT OF ISSUES TO BE DECIDED**

Whether Carlos Barros ("Mr. Barros" or "Movant") should be appointed Lead Plaintiff pursuant to Section 27(a)(3)(B) of the Securities Act of 1933 (the "Securities Act"), as amended by Section 101(a) of the Private Securities Litigation Reform Act of 1995 ("PLSRA").

Whether the Court should approve Mr. Barros' selection of the law firm of Kahn Swick & Foti, LLC ("KSF") as Lead Counsel to represent the Class in this Action, pursuant to Section 27(a)(3)(B)(v) of the Securities Act, 15 U.S.C. § 77z-1 (a)(3)(B)(v), as amended by Section 101(a) of the PSLRA, and Heffner Hurst ("HH") as Local Counsel for the Class.

**PRELIMINARY STATEMENT**

Mr. Barros hereby moves to be appointed Lead Plaintiff pursuant to §27(a)(3)(B) of the Securities Act, 15 U.S.C. § 77z-1(a)(3)(B), as amended by Section 101(a) of the Private

Securities Litigation Reform Act of 1995 ("PLSRA"), and for approval of his selection of the law firm of KSF as Lead Counsel for the Class; and for approval of his selection of the law firm of HH as Local Counsel for the Class. Mr. Barros fully understands his duties and responsibilities to the Class, and is willing and able to oversee the vigorous prosecution of this action. As described in the Certification attached hereto at Exhibit A, Mr. Barros has suffered substantial losses as a result of his purchases of shares of Rubicon Technology, Inc. ("Rubicon" or the "Company") pursuant to the Company's public offering on or about March 19, 2014 (the "March Offering"). *See* Exhibit B. To the best of his knowledge, with losses of $13,665.00, Mr. Barros has sustained the largest loss of any investor seeking to be appointed as Lead Plaintiff. In addition to evidencing the largest financial interest in the outcome of this litigation, the Mr. Barros' Certification demonstrate his intent to serve as Lead Plaintiff in this litigation, including his cognizance of the duties of serving in that role. Moreover, Mr. Barros satisfies the applicable requirements of both the PSLRA and Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and is presumptively the "most adequate plaintiff."

Accordingly, Mr. Barros respectfully submits this memorandum of law in support of his motion, pursuant to §27(a)(3)(B) of the Securities Act, as amended by the PSLRA, for an order: (1) appointing Mr. Barros as Lead Plaintiff in this action pursuant to the Securities Act; (2) approving the Mr. Barros' selection of the law firm of KSF as Lead Counsel for the Class and HH as Local Counsel for the Class; and (3) granting such other and further relief as the Court may deem just and proper.

## PROCEDURAL BACKGROUND

This Action was filed on April 30, 2015 by Firerock Global Opportunity Fund, LP on behalf of all purchasers of Rubicon common stock in the Company's March 2014 Offering (the "Class"), seeking to pursue remedies under §§11, 12(a)(2) and 15 of the Securities Act. Pursuant to 15 U.S.C. § 77z-1(a)(3)(A)(i), on April 30, 2015, the first notice that a class action had been initiated against Defendants was published on *Business Wire*, a widely-circulated national business-oriented wire service, advising members of the proposed Class of their right to move

the Court to serve as Lead Plaintiff no later than June 29, 2015. *See* Exhibit C. Mr. Barros is a Class Member (*see* Exhibit A) who has timely filed this motion within the 60 day period following publication of the April 30, 2015, notice.

## STATEMENT OF FACTS[1]

Rubicon is a vertically integrated, advanced electronics materials company specializing in monocrystalline sapphire, which is commonly used in light emitting diode ("LED") lighting technology. Rubicon sells sapphire to LED manufacturers and to other manufacturers who process the sapphire into various components. Rubicon is dependent on a limited number of customers. In 2012 and 2013, the Company's two largest customers accounted for approximately 67% and 44% of total revenues, respectively. Rubicon works closely with its customers to optimize its products with its customers' processes and applications.

In a February 19, 2014 conference call, the Company touted its financial results and its financial prospects. The Company's Chief Financial Officer, William F. Weissman, forecasted a $1.5 million increase in revenues for the first quarter 2014, reaffirmed a $400,000 reduction in idle plant costs, and repeated that "gross profit will be flattish" from the fourth quarter of 2013 to the first quarter of 2014. Following the issuance of the earnings release and the conference call, on February 20, 2014, the price of Rubicon stock jumped nearly 14%, from $10.80 per share to $12.28 per share, and continued to climb until reaching its highest price in the last 24 months of $14.49 per share on March 5, 2014.

On December 6, 2013, Rubicon filed with the SEC an amended shelf registration statement (the "Form S-3A"), which included a form of prospectus (the "Prospectus") authorizing the Company and to-be-identified "selling stockholders" to sell up to $100,000,000 worth of shares of Rubicon common stock, at any time, in one or more offerings. The SEC declared the Form S-3A effective on December 13, 2013. On March 19, 2014, Rubicon stock was trading at $12.94 per share and Rubicon filed with the SEC a prospectus supplement (the

---

[1] These facts were derived from the Complaint filed in this Action. *See* Dkt. # 1.

"Prospectus Supplement"), offering to register for sale 2.5 million shares of Rubicon common stock at $13.00 per share by the Cross Atlantic Funds. The March 2014 Offering was sold pursuant to the Form S-3, the Prospectus and the Prospectus Supplement (jointly referred to herein as the "Registration Statement"). The Registration Statement incorporates by reference the following documents filed with the SEC: Annual Report on Form 10-K for the year ended December 31, 2013, and Quarterly Reports on Form 10-Q for the three months ended March 31, 2013, June 30, 2013 and September 30, 2013, as well as additional SEC filings.

The Registration Statement contained untrue statements of material facts, omissions of facts necessary to make the statements made in the Registration Statement not misleading, and was not prepared in accordance with rules and regulations governing its preparation. Specifically, the Registration Statement negligently failed to disclose material trends, events and uncertainties known to management that were reasonably expected to have a material impact on the Company's income from continuing operations, including the reversal of its trend of shrinking losses, higher-than expected development costs and inventory write-offs due to Rubicon's inability to sell certain of its products during its 2014 first quarter at prices greater than their cost to manufacture, causing such inventory to be impaired under applicable accounting rules and regulations

Investors would only learn the truth about Rubicon on May 1, 2014, when the Company announced its financial results for the first quarter of 2014 and reported that: losses were not shrinking but were actually growing; development costs were higher than expected; the Company needed to write off $1.1 million in inventory to align to market value; and revenues from the patterned sapphire substrates product line were minimal. In response to these revelations, Rubicon's share price dropped 16% on May 1, 2014, from approximately $10 per share to $8.51 per share on very heavy trading volume. The next trading day, May 5, 2014, the price of Rubicon common stock declined again by almost 6%, to close at $8.01 on very heavy trading volume.

The precipitous decline in the price of Rubicon shares following Defendants' belated

disclosures was evidence of the eradication of the prior artificial inflation in the price of Company shares caused as a result of Defendants' publication of a materially false and misleading Registration Statement.  As a result of their purchases of Rubicon stock in connection with the March 2014 Offering, including those who purchased shares traceable to the Offering in the public markets immediately thereafter, Movant and other members of the Class suffered economic losses, *i.e.* damages under the federal securities laws.

<u>ARGUMENT</u>

## I.      MR. BARROS SHOULD BE APPOINTED LEAD PLAINTIFF

### A.      The Procedural Requirements Pursuant to the PSLRA

The PSLRA sets forth a detailed procedure for the selection of a Lead Plaintiff to oversee securities class actions brought pursuant to the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 77z-1(a)(3).

First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the class informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 77z-1(a)(3)(A)(i). Plaintiff in the first-filed action published a notice on *Business Wire* on April 30, 2015 (*See* Exhibit C). This notice announced that applications for appointment as Lead Plaintiff were to be made no later than June 29, 2015. Within 60 days after publication of the required notice, any member or members of the proposed Class may apply to the Court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in this action. 15 U.S.C. § 77z-1(a)(3)(A) and (B).

Next, according to the PSLRA, within 90 days after publication of the initial notice of pendency of the action, the Court shall appoint as Lead Plaintiff the movant or movants that the Court determines to be most capable of adequately representing the interests of Class Members. 15 U.S.C. § 77z-1(a)(3)(B)(i). In determining who is the "most adequate plaintiff," the act provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that—

(aa)  has either filed the complaint or made a motion in response to a notice…

(bb)  in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)  otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure [pertaining to class actions].

15 U.S.C. § 77z-1(a)(3)(B)(iii).

Only by a showing of proof that a Lead Plaintiff movant will not fairly and adequately represent the Class, or is subject to unique defenses that will render such plaintiff incapable of adequately representing the Class, will this presumption be overcome. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).

**B.     Mr. Barros is "The Most Adequate Plaintiff"**

**1.     Mr. Barros Has Complied With the PLSRA and Should Be Appointed Lead Plaintiff**

Mr. Barros moves this Court to be appointed Lead Plaintiff and has met the requirement of 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(aa) by timely filing his motion on June 29, 2015. Moreover, Mr. Barros has sustained a substantial loss from his investment in Rubicon stock and has shown his willingness to represent the Class by signing a Certification detailing his transactions in Rubicon common stock pursuant to the March 2014 Offering. *See* Exhibit A. As demonstrated by his Certification, Mr. Barros is prepared to consult with counsel on a regular basis, prior to every major litigation event, and to direct the course of litigation, with the benefit of counsel's advice. In addition, Mr. Barros has selected and retained highly competent counsel with significant experience in class action and securities litigation to represent the Class. The firm biography of proposed Lead Counsel for the Class, KSF, is attached hereto as Exhibit D. The firm biography of proposed Local Counsel for the Class, HH, is attached hereto as Exhibit E.

**2.     Mr. Barros Has the Largest Financial Interest**

According to 15 U.S.C. § 77z-1(a)(3)(B)(iii), the Court shall appoint as Lead Plaintiff the movant who has the largest financial interest in the relief sought by the action. *See City of*

*Sterling Heights Gen. Employees' Retirement Sys. v. Hospira, Inc.*, No. 11-CV-8332, 2012 U.S. Dist. LEXIS 54081 at *3 (N.D. Ill. Apr. 18, 2012). A movant who "has the largest financial interest in this litigation and meets the adequacy and typicality requirements of Rule 23 … is presumptively entitled to lead plaintiff status." *Maiden v. Merge Technologies, Inc.*, No. 06-349, No. 06-356, No. 06-375, No. 06-431, No. 06-483, No. 06-493, & No. 06-519, 2006 WL 3404777, at *4 (E.D. Wis. 2006) *citing In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status…"). As demonstrated herein, Movant has incurred losses of $13,665.00 relating to his purchases of Rubicon securities in connection with the March 2014 Offering, the largest known financial interest in the relief sought by the Class. *See* Exhibit B.

### 3.     Mr. Barros Satisfies the Requirements of Rule 23

According to 15 U.S.C. § 77z-1(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two—typicality and adequacy—directly address the personal characteristics of the class representative. *In re Motorola Sec. Litig.*, 2003 U.S. Dist. LEXIS 12651 at *10 (N.D. Ill. July 16, 2003) ("In selecting the lead plaintiff under the PSLRA, however, typicality and adequacy of representation are the only relevant considerations."). Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of

the remaining requirements until the Lead Plaintiff moves for class certification. *See Lax v. First Merchants Acceptance Corp.*, No. 97-2715, No. 97-2716, No. 97-2737, No. 97-2791, No. 97-3767, No. 97-4237, No. 97-4013, & No. 97-4236, 1997 WL 461036 at *6 (N.D. Ill. August 6, 1997) ("A wide-ranging analysis under Rule 23 is not appropriate and should be left for consideration of a motion for class certification. This inquiry, therefore, focuses on … typicality and adequacy.") As detailed below, Mr. Barros satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying his appointment as Lead Plaintiff. Mr. Barros has claims that are typical of those of other class members and can adequately serve as Lead Plaintiff.

### i. Mr. Barros' Claims Are Typical of the Claims of All the Class Members

Under Rule 23(a)(3), typicality exists where "the claims…of the representative parties" are "typical of the claims…of the class." The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiff's claims arise from the same event or course of conduct that gives rise to claims of other Class Members, and when the claims are based on the same legal theory. *See Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). The requirement that the proposed class representatives' claims be typical of the claims of the Class does not mean, however, that the claims must be identical. *See De La Fuente v. Stokely-Van Camp, Inc.*, 713 F. 2d 225, 232-233 (7th Cir. 1983), *overruled on other grounds by Green v. Mansour*, 474 U.S. 64 (1985).

In this case, the typicality requirement is met because Mr. Barros' claims are identical to and non-competing and non-conflicting with the claims of the other Class Members. Mr. Barros and all of the Class Members purchased Rubicon securities pursuant to the Company's March 2014 Offering when the stock prices were artificially inflated as a result of Defendants' fraudulent misrepresentations and omissions, and thus, both Mr. Barros and the Class Members suffered damages as a result of their purchases. Simply put, Mr. Barros, like all other Class Members: (1) purchased Rubicon securities during the Class Period; (2) purchased Rubicon

securities at artificially-inflated prices as a result of Defendants' misrepresentations and omissions; and (3) suffered damages thereby. Mr. Barros therefore satisfies the typicality requirement. *See e.g. Johnson v. Tellabs, Inc.*, 214 F.R.D. 225, 228 (N.D. Ill. 2002). Mr. Barros' claims and injuries arise from the same conduct from which the other class members' claims and injuries arise. *See Rosario,* 963 F.2d at 1018. Mr. Barros is not subject to any unique or special defenses. Thus, Mr. Barros meets the typicality requirement of Fed. R. Civ. P. Rule 23 because his claims are the same as the claims of the other Class Members.

### ii. Mr. Barros Will Adequately Represent the Class

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of the Movant to: (1) whether there are any conflicts between the interests of the Movant and the members of the Class; (2) whether the Movant is an adequate representative of the Class; (3) whether the interests of the Movant are clearly aligned with the members of the putative Class; and (4) whether there is evidence of any antagonism between their respective interests. 15 U.S.C. § 77z-1 (a)(3)(B). *See also Johnson  v. Tellabs, Inc.*, 214 F.R.D. 225, 228-229 (the standard for adequacy of representation under Rule 23(a)(4) is met where: "(1) [movants'] claims are not antagonistic or in conflict with those of the class; (2) [movants have sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) [movants are] represented by competent, experienced counsel who will be able to prosecute the litigation vigorously").

Mr. Barros' interests are clearly aligned with the members of the Class because his claims are identical to the claims of the Class. There is no evidence of antagonism between his interests and those of the proposed Class Members. Furthermore, Mr. Barros has a significant, compelling interest in prosecuting this action to a successful conclusion based upon the large financial loss he incurred as a result of the wrongful conduct alleged herein. This motivation, combined with Mr. Barros' identical interest with the members of the Class, shows that he will adequately and vigorously pursue the interests of the Class. In addition, Mr. Barros has selected

KSF, a law firm highly experienced in successfully prosecuting securities class actions and complex litigation, as Proposed Lead Counsel.

In sum, because of Mr. Barros' common interests with the Class Members, his clear motivation and ability to vigorously pursue this action, and his competent counsel, the adequacy requirement of Fed. R. Civ. P. Rule 23(a) is met in this case. Therefore, since Mr. Barros not only meets both the typicality and adequacy requirements of Fed. R. Civ. P. Rule 23(a), but also has sustained the largest amount of losses at the hands of the Defendants, he is, in accordance with 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I), presumptively the most adequate plaintiff to lead this action.

## II.     THE COURT SHOULD APPROVE MR. BARROS' CHOICE OF COUNSEL

The PSLRA vests authority in the Lead Plaintiff to select and retain counsel to represent the Class, subject to the Court's approval. *See* 15 U.S.C. § 77z-1(a)(3)(B)(v). Thus, this Court should not disturb the Lead Plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa).

Mr. Barros has selected KSF to serve as Lead Counsel for the Class. KSF has not only successfully prosecuted complex securities fraud actions, but has also successfully prosecuted many other types of complex class actions. *See* Exhibit D. Furthermore, Mr. Barros' counsel have continually invested time and resources in carefully investigating and prosecuting this case. This Court may be assured that in the event this motion is granted, the members of the Class will receive the highest caliber of legal representation.

## CONCLUSION

For all of the foregoing reasons, Mr. Barros respectfully requests that this Court: (1) appoint Mr. Barros to serve as Lead Plaintiff in this action; (2) approve Mr. Barros' selection of Lead Counsel and Local Counsel for the Class; (3) grant such other and further relief as the Court may deem just and proper.

Dated: June 29, 2015                          HEFFNER HURST

   /s/ Matthew T. Heffner
Matthew T. Heffner
30 N. LaSalle, Suite 1210
Chicago, Illinois 60602
312.346.3466

*Local Counsel for Lead Plaintiff Movant Carlos
Barros*

KAHN SWICK & FOTI, LLC
Kim E. Miller
250 Park Ave., Suite 2040
New York, New York 10177
Telephone: (212) 696-3730
Facsimile: (504) 455-1498

-and-

Lewis S. Kahn
206 Covington Street
Madisonville, Louisiana 70447
Telephone: (504) 455-1400
Facsimile: (504) 455-1498

*Proposed Lead Counsel for Lead Plaintiff Movant
Carlos Barros*

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 29, 2015, he caused true copies of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF CARLOS BARROS TO BE APPOINTED LEAD PLAINTIFF AND TO APPROVE LEAD PLAINTIFF'S CHOICE OF COUNSEL** to be served to be served upon all counsel of record using the Court's CM/ECF system.

/s/ Matthew T. Heffner
Matthew T. Heffner